# STATE OF MICHIGAN

# COURT OF APPEALS

DANIELLE JOE, Personal Representative of the
Estate of XAVIER RAY JOE,

Plaintiff-Appellant/Cross-Appellee,

v

COMMUNITY EMERGENCY MEDICAL
SERVICE,

Defendant-Appellee/Cross-
Appellant,

and

J. FISHER, J. MERSER, and K. CANNON

Defendants-Appellees

UNPUBLISHED
May 26, 2016

No. 323276
Oakland Circuit Court
LC No. 2014-140495-NO

Before: STEPHENS, P.J., and CAVANAGH and MURRAY, JJ.

PER CURIAM.

Plaintiff[1] appeals as of right an order granting summary disposition to defendants, J.
Fisher, J. Merser, K. Cannon, and Community Emergency Medical Service ("Community").
Community cross-appeals that same order. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

### A. BACKGROUND FACTS

This appeal arises out of the death of Xavier Ray Joe ("Xavier"). On September 23,
2012, Community was under contract with the city of Southfield to provide back-up advanced
life support (ALS) ambulance services. Defendants J. Fisher, J. Merser, and K. Cannon

---

[1] Plaintiff refers to Danielle Joe, the personal representative of the estate of Xavier Joe.

-1-

(collectively referred to as "the Southfield Dispatchers") were 911 dispatchers for Southfield. On September 23, 2012 at 8:14 p.m., the Southfield Dispatchers requested a Community ambulance to be on standby in the city of Southfield as the Southfield ambulance units were all responding to a house fire. Also at 8:14 p.m., plaintiff called Southfield Dispatch and informed Fisher that Xavier was suffering from a severe asthma attack, which required immediate medical attention. At 8:18 p.m., Fisher called Community and requested that Community send an ambulance to 16204 Oxley Road, Southfield, to respond to Xavier's asthma attack. At 8:21 p.m., Community dispatched Unit 721 to the Oxley location to respond to plaintiff's request.

At 8:27 p.m., one of the Southfield Dispatchers asked Community regarding Unit 721's estimated time of arrival to the Oxley location. Unit 721 told Community that their estimated time of arrival was 10 minutes. Community subsequently told one of the Southfield Dispatchers that Unit 721's estimated time of arrival was less than 10 minutes. At 8:27 p.m., Unit 723 was also dispatched by Community to the Oxley Location.

At 8:29 p.m., one of the Southfield Dispatchers called Community and cancelled the request to Oxley because Southfield "was going to handle it." Community subsequently told Units 721 and 723 that the response call to the Oxley location was cancelled. As a result, Units 721 and 723 never arrived at the Oxley location because their response had been cancelled. According to plaintiff, a Southfield unit responded 45 minutes after her request for an ambulance. According to Southfield Fire Chief Keith Rowley, a unit responded "closer to 15 minutes" after plaintiff called 911. Xavier passed away from the asthma attack.

## B. PROCEDURAL HISTORY

Plaintiff subsequently filed a complaint against defendants, asserting that Community was negligent for failing to provide an ambulance response and was grossly negligent for (1) failing to provide an ambulance response, (2) making false representations to Southfield that Community was responding to the request for ambulance service when it was not responding, and (3) failing to inform Southfield that it was not responding to Xavier's medical emergency. Plaintiff also alleged that the Southfield Dispatchers were grossly negligent for (1) failing to dispatch an ambulance to Xavier in a timely manner, (2) failing to confirm that Community was actually responding to the request for an ambulance, (3) failing to ensure that an ambulance was available to respond to emergencies in Southfield, and (4) providing false information to plaintiff regarding the status of the ALS ambulance response time.

Prior to the start of discovery, the Southfield Dispatchers filed a motion for summary disposition pursuant to MCR 2.116(C)(7), arguing that plaintiff's claims were barred by governmental immunity. In response, plaintiff argued that her claims were not barred by governmental immunity because she pleaded facts that show the Southfield Dispatchers were grossly negligent and the proximate cause of Xavier's death.

Soon thereafter, Community filed a motion for summary disposition pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10), asserting that plaintiff's claims sound in medical malpractice, not ordinary negligence. Community asserted that because plaintiff's claim was in essence a medical malpractice claim, it was barred because (1) plaintiff failed to file a notice of intent and affidavit of merit as required by statute and (2) no genuine issues of material fact existed

regarding the facts alleged in plaintiff's complaint. Plaintiff responded by arguing that her claim did not sound in medical malpractice.

The trial court issued a written opinion granting summary disposition to defendants. First, the court stated that summary disposition was appropriate for the Southfield Dispatchers because plaintiff's complaint did not contain facts to support a finding of gross negligence that was the most immediate, proximate cause of injury. Second, the trial court granted summary disposition to Community because Community "presented factual evidence that specifically refutes the allegations in the Complaint" and because plaintiff's claims sound in medical malpractice, not ordinary negligence. The trial court entered a final order of dismissal of all of plaintiff's claims against all of the defendants, which plaintiff now appeals as of right.

## II. ANALYSIS

### A. ALLEGATIONS AGAINST THE SOUTHFIELD DISPATCHERS

Plaintiff first argues that the trial court erred when it granted the Southfield Dispatchers motion for summary disposition on the basis of governmental immunity. This Court reviews de novo a trial court's grant of summary disposition. *McLean v Dearborn*, 302 Mich App 68, 72; 836 NW2d 916 (2013). Pursuant to MCR 2.116(C)(7), a motion for summary disposition may be brought when a claim is barred because of immunity granted by law. *Plunkett v Dep't of Transp*, 286 Mich App 168, 180; 779 NW2d 263 (2009). To survive a motion brought on this basis, a plaintiff must allege facts warranting the application of an exception to governmental immunity. *Id*. In reviewing a motion for summary disposition under MCR 2.116(C)(7), this Court considers the affidavits, pleadings, and other documentary evidence presented by the parties and accepts the plaintiff's well-pleaded allegations as true, except those contradicted by documentary evidence. *Oliver v Smith*, 290 Mich App 678, 683; 810 NW2d 57 (2010). "If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide." *Moraccini v Sterling Heights*, 296 Mich App 387, 391; 822 NW2d 799 (2012).

MCL 691.1407(2) provides:

Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency . . . is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment . . . while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

-3-

It is not disputed that the Southfield Dispatchers were acting within the scope of their authority and the governmental agency was engaged in the exercise or discharge of a governmental function. Therefore, for plaintiff to avoid dismissal of her tort action, she must prove both that "(1) the governmental employee[s'] conduct [amounted to gross negligence], and (2) the alleged misconduct was *the* proximate cause of the plaintiff's injury." *Tarlea v Crabtree*, 263 Mich App 80, 83; 687 NW2d 333 (2004).

## 1. GROSS NEGLIGENCE

Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). To come within that standard, an actor must exhibit a "willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks. . . . [I]f an objective observer watched the actor, he could conclude, reasonably, the actor simply did not care about the safety or welfare of those in his charge." *Tarlea*, 263 Mich App at 90.

First, plaintiff alleged that the Southfield Dispatchers were grossly negligent for "[f]ailing to dispatch ALS ambulance service to Plaintiff's decedent in a timely manner." The undisputed evidence establishes that the Southfield Dispatchers received a call from plaintiff indicating that Xavier was suffering from an asthma attack. Four minutes after receiving the call from plaintiff, the Southfield Dispatchers called Community to dispatch an ambulance. Assuming the four minute delay in dispatching an ambulance could be considered negligent conduct, it cannot be said that the Southfield Dispatchers had a substantial lack of concern for whether an injury would result. There is no evidence of a "willful disregard of precautions or measures to attend to safety," or that the dispatchers otherwise ignored the need for an ambulance. Therefore, plaintiff has not created a genuine issue of material fact that the Southfield Dispatchers engaged in conduct that amounts to gross negligence.

Second, defendant alleged that the Southfield Dispatchers were grossly negligent for "failing to confirm that Community was in fact responding to their request for ALS ambulance service to Plaintiff's decedent." The evidence presented directly refutes this allegation as the evidence establishes that at 8:27 p.m., one of the Southfield Dispatchers asked Community regarding Unit 721's estimated time of arrival to the Oxley location, thus confirming that Community was in fact responding to the request for ALS ambulance service. Because reasonable minds could not differ regarding whether the Southfield Dispatchers were grossly negligent for "failing to confirm that Community was in fact responding to their request for ALS ambulance service to Plaintiff's decedent," the trial court properly granted summary disposition to defendants on this allegation.

Plaintiff next alleged that the Southfield Dispatchers were liable for "failing to ensure that a mutual aid ALS ambulance was available to respond to emergency calls within the City of Southfield when they had actual knowledge that all City of Southfield Fire Department ambulances were unavailable at the time that Danielle Joe contacted the Southfield 911 emergency center." Again, the evidence presented directly contradicts this allegation. Prior to plaintiff contacting the Southfield Dispatchers, the Southfield Dispatchers requested a Community ambulance to standby in the city of Southfield as Southfield dispatch had other ambulance units responding to a house fire. As such, summary disposition was proper as

-4-

reasonable minds could not differ regarding whether the Southfield Dispatchers were grossly negligent in this regard.

Lastly, plaintiff alleged that the Southfield Dispatchers were grossly negligent for "providing false information to [plaintiff] . . . regarding the status of the ALS ambulance response" by stating to plaintiff "that an ALS ambulance was responding when in fact it was not." Contrary to plaintiff's allegation, the undisputed facts show that an ALS ambulance was responding to the scene of the emergency. In fact, two Community ambulances were responding to the scene as a result of the Southfield Dispatchers request for Community to dispatch an ambulance unit in response to plaintiff's call for assistance. Furthermore, plaintiff has failed to identify any other false statements regarding the status of an ambulance response. Accordingly, the trial court properly granted the Southfield Dispatchers' motion for summary disposition.

## 2. PROXIMATE CAUSE

We also hold that, even if the Southfield Dispatchers were grossly negligent, plaintiff failed to establish that the Southfield Dispatcher's conduct was the proximate cause of Xavier's injuries. In order for a governmental employee's grossly negligent conduct to be considered the proximate cause of an injury, that conduct must be "the one most immediate, efficient, and direct cause of the injury or damage." *Robinson v City of Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000). The determination of whether a governmental employee's conduct "proximately caused the complained-of injury under MCL 691.1407 is generally a question of fact, but, if reasonable minds could not differ, a court may grant summary disposition." *Briggs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007). Here, the most immediate, efficient, and direct cause of Xavier's death was Xavier's asthma attack, not an allegedly delayed ambulance response. It was the asthma, not an untimely arrival of an ambulance, that was the most immediate and direct cause of Xavier's death. Hence, the Southfield Dispatchers were not *the* proximate cause of plaintiff's injuries. See *Costa v Community Medical Services*, 263 Mich App 572, 579; 689 NW2d 712 (2004), aff'd 475 Mich 403 (2004). Accordingly, plaintiff cannot establish liability in avoidance of governmental immunity because reasonable minds could not differ regarding whether the alleged misconduct was the proximate cause of the plaintiff's injury. MCL 691.1407(2); *Tarlea*, 263 Mich App at 83.

## 3. PREMATURE GRANT OF SUMMARY DISPOSITION

Plaintiff also argues that summary disposition was premature because discovery had not yet been completed. When discovery is not complete, a trial court may nonetheless grant summary disposition " 'if there is no fair likelihood that further discovery will yield support for the nonmoving party's position.' " *Anzaldua v Neogen Corp*, 292 Mich App 626, 636; 808 NW2d 804 (2011), quoting *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009). A party opposing summary disposition cannot simply state that summary disposition is premature without identifying a disputed material issue and supporting that issue with independent evidence. *Marilyn Froling Revocable Living Trust v Bloomfield Hills Country Club*, 283 Mich App 264, 292; 769 NW2d 234 (2009). The party opposing summary disposition must offer the required affidavits, MCR 2.116(H), with the probable testimony to support its contentions. *Id*. at 292-293. Plaintiff has failed to submit any supporting independent evidence to support her position. As a result, she cannot prove that there

is a fair likelihood that further discovery would have yielded support for her position. Summary disposition was not premature.

## B. ALLEGATIONS AGAINST COMMUNITY

Plaintiff also contends that the trial court erred when it granted summary disposition to Community on the basis that her complaint sounds in medical malpractice. Community filed its motion for summary disposition pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10), and the trial court granted the motion pursuant to MCR 2.116(C)(7) and (C)(10). It is unclear from the record which claims were disposed of pursuant to MCR 2.116(C)(7) and which claims were disposed of pursuant to MCR 2.116(C)(10). When it is unclear under which subrule the trial court granted summary disposition, and it appears that court looked beyond the pleadings in making its determination, this Court will consider the motion granted pursuant to MCR 2.116(C)(10). *DeHart v Joe Lunghammer Chevrolet, Inc*, 239 Mich App 181, 184; 607 NW2d 417 (1999).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). When deciding a motion for summary disposition, a court must consider the pleadings, affidavits, depositions, admissions and other documentary evidence submitted in the light most favorable to the nonmoving party. *Id*. "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Where the burden of proof at trial on a dispositive issue rests on a nonmoving party, the nonmoving party may not rely on mere allegations or denials in pleadings, but must go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *Id*. at 363.

Resolution of this case hinges on the proper characterization of plaintiff's claim; whether plaintiff's claims sound in ordinary negligence or medical malpractice. "It is well established that [t]he gravamen of an action is determined by reading the claim as a whole and looking beyond the procedural labels to determine the exact nature of the claim." *David v Sternberg*, 272 Mich App 377, 381; 726 NW2d 89 (2006) (internal quotation marks and citations omitted). A plaintiff " 'cannot avoid the application of the procedural requirements of a malpractice action by couching [her] cause of action in terms of ordinary negligence.' " *Id*. quoting *Dorris v Detroit Osteopathic Hosp Corp*, 460 Mich 26, 43; 594 NW2d 455 (1999).

There are two inquiries involved in determining whether a case involves medical malpractice or ordinary negligence claims. *Bryant v Oakpointe Villa Nursing Home*, 471 Mich 411, 420-422; 684 NW2d 864 (2004). The first inquiry is whether the action "is being brought against someone who, or an entity that, is capable of malpractice." *Id*. at 420. The second inquiry is "whether the alleged claim sounds in medical malpractice." *Id*. at 422. If both prongs of the test are met, then "the action is subject to the procedural and substantive requirements that govern medical malpractice actions." *Id*. at 423-424.

The Michigan Supreme Court has established a two-prong test for determining whether an allegation sounds in medical malpractice: "(1) whether the claim pertains to an action that occurred within the course of a professional relationship; and (2) whether the claim raises questions of medical judgment beyond the realm of common knowledge and experience." *Id*. at 422. With regard to the second prong, the Michigan Supreme Court has explained:

> If the reasonableness of the health care professionals' action can be evaluated by lay jurors, on the basis of their common knowledge and experience, it is ordinary negligence. If, on the other hand, the reasonableness of the action can be evaluated by a jury only after having been presented the standards of care pertaining to the medical issue before the jury explained by experts, a medical malpractice claim is involved. [*Id*. at 423.]

Failure to comply with the procedural requirements of a medical malpractice claim is dismissal of plaintiff's claim. *Lockwood v Mobile Medical Response, Inc*, 293 Mich App 17, 26-27; 809 NW2d 403 (2011). One such procedural requirement is that a medical malpractice claimant must provide to proposed defendants notice of his or her intent to sue at least 182 days before commencing an action. MCL 600.2912(b)(1); *Lockwood*, 293 Mich App at 26. In addition to the notice of intent, a plaintiff alleging medical malpractice must also file an affidavit of merit. MCL 600.2912(d)(1).

It is not disputed that the action is being brought against a person or entity that is capable of malpractice. Further, neither party disputes whether the claims pertain to an action that occurred within the course of a professional relationship. Therefore, the issue on appeal concerns whether plaintiff's claims raise questions of medical judgment beyond the realm of common knowledge and experience. *Lockwood*, 293 Mich App at 422.

When applying the *Bryant* test to the allegations in plaintiff's complaint, some of plaintiff's allegations sound in medical malpractice, while others sound in ordinary negligence. We will address each of plaintiff's allegations in turn.

Plaintiff's first allegation is that Community was negligent and grossly negligent for failing to provide an ambulance response to Xavier's medical emergency. Community asserts that this Court's decision in *Lockwood*, 293 Mich App at 26, is controlling. In *Lockwood*, the decedent began having difficulty breathing while playing softball. *Id*. at 19-20. A call was made to a 911 operator and the defendant's ambulance was dispatched to the scene at 1:48 p.m. *Id*. at 20. When the ambulance arrived at the scene, the decedent was "pulseless and apneic." *Id*. Ultimately, the decedent was never revived. *Id*. The plaintiff subsequently filed a complaint alleging that the defendant was negligent for failing to timely respond to the 911 call and for failing to timely provide transportation to the decedent. *Id*. The *Lockwood* Court held that the plaintiff's claims sounded in medical malpractice because "[t]imeliness within the context of a medical emergency would not be easily understood and evaluated by lay jurors without expert testimony regarding the medical issue." *Id*. at 26.

Unlike *Lockwood*, plaintiff's allegations are not that Community failed to respond timely, but rather, that Community was negligent and grossly negligent for failing to provide *any*

ambulance service. Thus, plaintiff's allegations are distinguishable from those asserted in *Lockwood*.

Nonetheless, there are situations in which an ambulance operator will need to exercise medical judgment. *Id*. at 31 n 4 (KRAUSE, J., dissenting). This is such a situation. The Community ambulance operators of Units 721 and 723 exercised medical judgment when deciding whether to continue to the Oxley location, knowing that the dispatch was "priority one," or to discontinue their respective routes as directed by the Community dispatcher. This decision required medical judgment as the ordinary laymen does not know (1) the standard of care that is appropriate for responding to a "priority one" dispatch and (2) if the ambulance operators acted reasonably when discontinuing their route to the location when told that the response had been cancelled. Medical expert testimony would be required to explain the medical judgment of the Community ambulance drivers in light of the situation to which they were responding. Accordingly, this claim raises questions of medical judgment beyond the realm of common knowledge and experience. *Bryant*, 471 Mich at 422. Therefore, plaintiff's claims that Community was negligent and grossly negligent for failing to provide an ambulance response sound in medical malpractice, not ordinary negligence. Because plaintiff failed to provide defendants a notice of intent and affidavit of merit with her complaint, the trial court properly granted Community's motion for summary disposition.

Plaintiff also alleged that Community was grossly negligent[2] by "making false representations to the City of Southfield 911 dispatchers that it was responding to the request for ALS ambulance service, when it fact it was not responding to the emergency and had not dispatched an ambulance unit to the medical emergency." No medical expert testimony is necessary to establish that it is unreasonable to make false representations regarding an ambulance service response. Laypersons are capable of understanding these simple facts and they can be evaluated by jurors on the basis of their common knowledge and experience. Thus, this allegation sounds in ordinary negligence, as opposed to medical malpractice.

Although this allegation sounds in ordinary negligence, the trial court properly granted summary disposition to Community as no genuine issue of fact exists regarding this allegation. The evidence established that when Community told the Southfield 911 dispatchers that it was responding to the emergency, Community had dispatched an ambulance unit. Accordingly, no genuine issue of material fact exists regarding whether Community was grossly negligent by "making false representations to the City of Southfield 911 dispatchers that it was responding to the request for ALS ambulance service, when it fact it was not responding to the emergency and had not dispatched an ambulance unit to the medical emergency." There is no factual support for this allegation.

Plaintiff also alleged that Community was grossly negligent for "failing to advise the City of Southfield 911 dispatchers that it was not in fact responding to the scene [of the emergency.]"

---

[2] In order to seek liability against emergency medical providers, plaintiff must allege that the providers engaged in grossly negligent or willful misconduct. MCL 333.20965(1). See *Costa* 263 Mich App at 580.

We hold that this allegation does not involve medical judgment beyond the realm of common knowledge and experience. A medical expert would not be needed to testify to the applicable standard of care as no medical judgment is invoked in this allegation. Thus, this allegation sounds in ordinary negligence. Despite the claim sounding in ordinary negligence, the trial court properly granted summary disposition to Community as there is no genuine issue of material fact regarding whether Community failed "to advise the City of Southfield 911 dispatchers that it was not in fact responding to the scene [of the emergency.]" This allegation is premised on the allegation that Community did not dispatch an ambulance to the emergency. As discussed previously, the evidence demonstrates that Community did in fact dispatch two ambulance units to the scene of the emergency. Further, it was Southfield that subsequently told Community to discontinue their run to the scene of the emergency, thus, Southfield was already aware that Community discontinued the run. Accordingly, no genuine issue of material facts exist regarding whether Community was grossly negligent for failing "to advise the City of Southfield 911 dispatchers that it was not in fact responding to the scene."[3]

## III. CONCLUSION

For the reasons stated herein, we affirm the trial court's order granting summary disposition to defendants.

/s/ Mark J. Cavanagh
/s/ Christopher M. Murray

---

[3] The resolution of this issue also resolves Community's cross-appeal.